CLOTHILDE BODINE and Others, Respondents, *v.* RONALD K. BROWN, and GEORGE CHESTERMAN, as Trustees, etc., of GEORGE CHESTERMAN, Deceased, and Others, Appellants, Impleaded with LOUIS A. BODINE and Others, Respondents.

*The words "issue or heirs" construed to mean "heirs" simply — division per capita.*

The will of George Chesterman, after making, by its eighth clause, certain provisions for his wife during her life, gave the residue of his real estate (which constituted a large proportion of the entire property) to his executors in trust to divide the net income, after deducting a third part of it, which had been given to his wife, between his children in equal proportions during their natural lives, and further provided, "upon the death of either of my said children, I do give and devise the fourth part of such real estate to the issue or heirs of such child, in fee, to be equally divided between them." At the time that the will was executed only two of the testator's four children had reached majority, and of these one was unmarried, while the other was married and had one child. By another clause of his will the testator carefully guarded against intestacy relative to his personal property, by giving one-fourth part of such property to the "heirs" of a child dying, the word "issue" not being used in that clause.

*Held*, that by the use of the words "issue or heirs of such child," the testator intended to give to the issue of a child dying, if issue there were surviving, the share of the child, but, where a child died without issue, that the share of such child should go to the child's heirs at law at the time of the child's death to be divided among them *per capita* and not *per stirpes.*

APPEAL by the defendants, Ronald K. Brown and another, as trustees, etc., of George Chesterman, deceased, and others, from portions of an interlocutory judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 30th day of June, 1896, upon the report of a referee; also a motion by the said defendants for a new trial upon a case containing exceptions.

*Wm. G. Choate* and *George W. Van Slyck*, for the defendant trustees, appellants.

*F. J. Worcester*, for the plaintiffs, respondents.

*Jno. M. Gardner*, for the defendant Louis A. S. Bodine, respondent.

*H. A. James*, for guardian *ad litem* of infant defendants, respondents.

INGRAHAM, J. :

The question to be determined in this case depends upon the construction to be given to the eighth clause of the will of George Chesterman, deceased. The will was executed on the 16th day of October, 1865. At the time the testator had living four children, two of age and two infants. James, the oldest, was then twenty-four. Carrie, the mother of the plaintiffs, was then twenty-two, was married and had one child living, and the other two children of the testator were then ten years of age. James, at that time, had not nor since that time has he had, children. The other two children are also unmarried and without issue. By the eighth clause of the will the testator, having made certain provision for his wife during her life, gave all the rest and residue of his real estate to his executors in trust, to divide the net income, after deducting a third part thereof which had been given to his wife, between his children in equal proportions during their natural lives, and further provided that "upon the death of either of my said children, I do give and devise the fourth part of such real estate to the issue or heirs of such child, in fee, to be equally divided between them." The question depends upon whether we are to construe the words "issue or heirs" as making an alternative devise to the issue of each child if he or she should leave issue surviving, or in case of failure of issue to the heirs of such child generally ; or whether the words " issue or heirs " are to be considered as synonymous, so that in the absence of issue of a child dying, that child's share would go to the testator's heirs at law, who would then take by descent and not by purchase.

The word "heirs" is used but once in the rest of the will, namely, in the seventh clause, where it is quite evident that it

is not used according to its legal meaning; but applies solely to personal property and evidently intended to mean "next of kin." By that clause the testator creates a trust as to two-thirds of his personal estate, giving the income of such two-thirds to his children during their lives, and, upon the death of either of his said children, one-fourth part of the said two-thirds is to be given directly to the "heirs" of such child dying. Nothing is said in this clause as to the issue of the child dying, but the bequest of the personal estate is to be paid to the heir or heirs of such child upon his or her death. It was the evident intention of the testator in that clause that the share of the personal estate held in trust for each child should be paid upon the death of the child to the person or persons being the next of kin of such child at the time of such child's death. No difference being made between a child dying leaving issue and a child dying without issue, in either case the next of kin of the child dying would take his or her share *per stirpes* and not *per capita.* Such being the evident intent as to the personal property, the testator being careful to avoid intestacy as to the personal property upon any contingency, we are to consider whether he intended that there should be intestacy as to any portion of his real estate.

By the eighth clause of the will he created a trust substantially similar to that he had created as to his personal property. Such real estate was devised to his executors in trust, one-third of the income therefrom to be paid to his wife during her life, two-thirds to be divided equally among his children during their respective lives, and, upon the termination of the trust as to each share by the death of a child, the share held for that child was disposed of by the clause in question. I think we must consider the age and condition of the children at the time the will was executed in determining just what ultimate disposition of his estate the testator intended by these words. Two of his children were of age, one unmarried and without children, the other married with one child, and the other two children, infants, about ten years of age. The testator must have had in mind at the time of the execution of this will the possibility of one of these three unmarried children dying without issue ; and, certainly, there is nothing in the will which would

indicate an intention that upon the happening of that contingency the share of the child dying should be undisposed of by the will. The evidence shows that the testator had a large amount of real estate, and, though its value at the time is not stated, it evidently constituted a large portion of his property. He was careful to avoid intestacy as to any portion of his personal property, and, in giving to the words used their ordinary and primary significance, he avoided intestacy as to any portion of his real property.

. The rule applied in the construction of wills, that in a doubtful case the court is never to give to a will a construction that will involve intestacy of any portion of a testator's property, is well settled, as is conceded by the learned counsel for the appellants; and I think we should apply this rule in this case, unless it appears by the will itself, or from the circumstances surrounding the testator at the time of the making of the will, that he had an intention not to dispose of his real estate by the will upon the happening of the quite possible contingency of one of his three children dying without leaving issue surviving. The two words used, "issue" and "heirs," have a well-settled legal meaning, and, while this legal meaning will yield in a case where such meaning would defeat the intention of the testator, it has been many times held that, in the absence of anything indicating such an intention, the primary legal meaning will be given to such words when used. The primary meaning of the word "issue" includes all descendants (*Drake* v. *Drake*, 134 N. Y. 224), but would not include the heirs at law of a person dying without children. The meaning of the word "heir" is much more extensive, and is applied to the person upon whom the law casts the estate in lands, tenements and hereditaments immediately upon the death of his ancestor. Thus, while the word "issue" would be included within the broader definition of the word "heir," a devise to heirs might include a class not included within a devise to his "issue." We must presume that the testator was acquainted with the primary legal meaning of these two words when applied to a devise of real estate, and that when he added the words, "or heirs of such child," he had an intention of doing something that would not be accomplished by the will without the use of those words. If either of his children died leaving issue, such issue would include the children and grandchildren of the child so dying. He must have intended

by the use of these words, therefore, something that would not be accomplished by a devise to his children or their "issue," and no object for the use of these words has been suggested, nor has any occurred to us, except that they were to apply upon the happening of the contingency of one or more of his children dying without issue. Applying this construction to the will, the meaning of the clause in question is perfectly clear. Intestacy is avoided. The testator intended to give to the issue of a child dying, if issue there were surviving, the share of the child, but where one of his children died without issue, he intended that such share should go to the child's heirs at law, whoever they might be, at the time of the child's death. Any other construction would violate the principle, well settled and frequently applied, that intestacy is never to be presumed, would make the use of the word "heir" superfluous and without meaning, and would say that the testator, making careful provision for the disposition of his personal property so that no intestacy could take place, intended to die intestate as to his real property, which at least constituted a very large proportion of his estate, on the happening of a very possible contingency. We do not think that we would be justified in adopting this construction, which would be contrary to the primary legal meaning of the words used, which is unsupported by any expressed intention of the testator, and which would violate a rule of law well settled and universally applied to the construction of wills. "If the instrument is silent as to intention and stands as a mere expression of a will, effect must be given to it according to those rules which, from long acquiescence, have acquired the force of authority. The present seems to be such a case. We are without any indication as to the intentions of the testator in making this disposition of his realty other than in the particular clause of the will itself." (*Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 128.)

We have carefully examined the codicils to the will, but find nothing in them that will tend to indicate that the testator had a different intention. The first codicil of any importance was executed twelve years after the will, and the other two upwards of fifteen years after the will. The situation of the testator's children had then materially changed. The youngest children had become of age, and an intention of the testator at that time, as a modification

of his original will executed in 1865, seems to us unimportant in determining what he intended by the execution of the will. There is, however, nothing in either of these codicils that indicates that the testator used these words in question in other than their primary legal significance, or from which we could find that the testator intended to die intestate as to any part of his estate. It being clear, therefore, that it was the intention of the testator that upon the death of either of his children without issue, the property should be divided equally among the heirs at law of the child so dying, the only remaining question is whether such heirs at law took *per capita* or *per stirpes*, and we think that the words used by the testator determine this question. The real estate belonging to any child dying is devised to the "issue or heirs" of such child to be equally divided between them. The direction as to the division applies whether the estate goes to the issue of the child dying, or to its heirs generally, and it is to be divided, not according to any share, but equally between them, that is, between the heirs of the child dying. The rule is stated in *Bisson* v. *W. S. R. R. Co.* (*supra*) as follows : "There being but the one class, there can be no doubt but that the division must be made *per capita* among the persons entitled and not *per stirpes*. I think the words 'share and share alike' make that sufficiently clear. Such a direction cannot be distinguished, practically, from one to divide equally. The testator has used the word 'heirs' to describe the persons who are to take and not to fix the interest which would vest in each person by virtue of his heirship, or representation of a stock, a preferable construction where the context will permit."

We think, therefore, that the construction adopted by the referee was right, and that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., RUMSEY, WILLIAMS and PATTERSON, JJ., concurred.

Judgment affirmed, with costs.